**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**CRISTOFER RAUL LOPEZ LOZANO,**

*Petitioner*,

**v.**

**TIMMY VAUGHT,** *in his official capacity as Warden of the Adams County Correctional Center,*

**TODD BLANCHE,** *in his official capacity as Acting Attorney General of the United States;*

**MARKWAYNE MULLIN,** *in his official capacity as Secretary of the U.S. Department of Homeland Security;*

**TODD M. LYONS,** *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement;*

*Respondents*.

**PETITION FOR A WRIT OF HABEAS CORPUS**

**Case No.** 5:26-cv-982-DCB-BWR

## INTRODUCTION

1. Petitioner Cristofer Raul Lopez Lozano ("Petitioner" or "Mr. Lopez Lozano") is a Honduran national, who has been living in the United States since 1999. On November 19, 2019, he won final protection from deportation in the form of withholding of removal under the Immigration and Nationality Act (INA), based on the Immigration Judge's (IJ) determination that he would more likely than not face persecution in his home country of Honduras, and after the Department of Homeland Security (DHS) decided not to appeal the IJ's decision.

2. Petitioner was released from Immigration and Customs Enforcement (ICE) custody on an order of supervision (OSUP) shortly thereafter. During the six years he was out of detention,

Mr. Lopez Lozano complied with all legal requirements, including attending regular ICE check-ins, holding steady employment, and avoiding criminal activity. However, on January 20, 2026, ICE re-detained Petitioner – without explanation – when he reported for a routine ICE check-in.

3. After holding him for about a week at the Baltimore Holding Room, ICE transferred him to La Salle, Louisiana, then to Florence, Arizona, and lastly to the Adams County Correctional Center in Natchez, Mississippi, where he remains today – over one thousand miles away from Maryland, where he had been living for the past two decades. ICE has not provided Petitioner with written reasons for revoking his OSUP, despite being required to under its own regulations, nor has it afforded him an informal interview to challenge the revocation and his re-detention.

4. Petitioner needlessly languishes in ICE custody as ICE allegedly searches for an alternative country to which to send him. There is none. Petitioner lacks citizenship in, ties to, or any connection to any country besides Honduras and the United States, and there is no indication that any third country would accept him for removal. In any case, Petitioner is entitled to a notice and the opportunity to seek fear-based relief with respect to any possible country of removal.

5. ICE has been holding Petitioner for nine months, pursuant to 8 U.S.C. § 1231, which governs the detention of noncitizens subject to a final order of removal that has been withheld or deferred. *See* 8 U.S.C. § 1231(a)(1)(B)(i). Petitioner's continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. There, the Supreme Court held that indefinite post-removal-period detention violates the Fifth Amendment's Due Process Clause if removal is not reasonably foreseeable. *See Zadvydas*, 533 U.S. at 688–90, 699–701.

6. Under the IJ's order granting him relief in the form of withholding of removal under the INA, ICE cannot remove Petitioner to his country of origin. 8 C.F.R. § 1208.16; 8 U.S.C. §

1231(b)(3)(A). It has now been almost seven years since Mr. Lopez Lozano's removal order became administratively final. His removal is not reasonably foreseeable because ICE has not identified any country willing to accept him or obtained any travel documents to a third country.

7. Petitioner's claims arise under the post-removal-detention framework of 8 U.S.C. § 1231(a)(6), the precise statutory provision the Supreme Court construed in *Zadvydas*. His detention is therefore categorically distinct from the pre-removal-order, mandatory-detention scenarios addressed by the Fifth Circuit in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), which involved noncitizens still in pending removal proceedings detained under 8 U.S.C. §§ 1225(b) and 1226. *See id.* at 498–508 (resolving only the statutory question whether §§ 1225 and 1226 require bond hearings during removal proceedings). Petitioner is in the opposite posture: his removal proceedings concluded years ago, his removal order has been final since 2019, and his detention has no "definite termination point" because Honduras cannot lawfully receive him; and no third country has agreed to do so. *Zadvydas* governs.

8. Even setting aside the categorical distinction in detention authority, Petitioner's due process claims are well-grounded. Petitioner's re-detention further violated ICE's own regulations and his Fifth Amendment due process rights. ICE re-detained him despite his strict compliance with the terms of his OSUP throughout the six years he was out of detention. ICE failed to comply with its own regulations for revocation of release, in violation of the Administrative Procedure Act (APA) and due process, pursuant to *Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

9. Moreover, Petitioner's re-detention without sufficient notice and an opportunity to be heard runs afoul of his Fifth Amendment due process rights. As a remedy for these procedural violations, Petitioner requests that this Court order his immediate release pursuant to *Zadvydas,* and based on procedural due process grounds. *See Kwong v. Vergara*, No. 5:25-CV-152-DCB-

RPM (ordering Petitioner released for lack of significant likelihood of removal in the reasonably foreseeable future).

## JURISDICTION

10. This Court has jurisdiction pursuant to 28 U.S.C. § 2241 (the general grant of habeas authority to the district court); Article I, Section 9, Clause 2 of the U.S. Constitution ("Suspension Clause"); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. §§ 2201, 2202 (Declaratory Judgment Act).

11. Federal district courts have jurisdiction to hear habeas claims by noncitizens challenging the lawfulness of their detention. *See, e.g., Zadvydas*, 533 U.S. at 687.

## VENUE

12. Venue is proper in this District and Division pursuant to 28 U.S.C. § 2241(c)(3) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is detained within this District at the Adams County Correctional Center in Natchez, Mississippi, which lies within the Western Division of the Southern District of Mississippi. *See* 28 U.S.C. § 124(d)(4).

## REQUIREMENTS OF 28 U.S.C. § 2243

13. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require Respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." Id.

14. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and

imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

**PARTIES**

15. Petitioner Cristofer Raul Lopez Lozano is a native and citizen of Honduras who was granted withholding of removal under the INA on November 19, 2019. He is currently detained at the Adams County Correctional Center in Natchez, Mississippi.

16. Respondent Timmy Vaught is the Warden of the Adams County Correctional Center in Natchez, Mississippi, a detention facility that contracts with ICE to detain noncitizens. He is responsible for overseeing the facility's administration and management. Mr. Vaught is Petitioner's immediate custodian. He is sued in his official capacity.

17. Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement. He is the federal agent charged with overseeing ICE's detention operations nationwide, including the detention of Petitioner at the Adams County Correctional Center. Mr. Lyons is a legal custodian of Petitioner. He is sued in his official capacity.

18. Respondent Markwayne Mullin is the Secretary of Homeland Security. The Department of Homeland Security (DHS) oversees ICE, which is responsible for administering and enforcing the country's immigration laws. Secretary Mullin is the ultimate legal custodian of Petitioner. He is sued in his official capacity.

19. Respondent Todd Blanche is the Attorney General of the United States. He oversees the immigration court system, which is housed within the Executive Office for Immigration Review (EOIR) and includes all IJs and the Board of Immigration Appeals (BIA). He is sued in his official capacity.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20. There is no statutory exhaustion requirement for habeas petitions challenging immigration detention. *See* 8 U.S.C. § 1252(d)(1) (limiting exhaustion requirement to "final order[s] of removal"); *Hernandez-Fernandez*, 2025 WL 2976923, at *6 ("Under the INA exhaustion of administrative remedies is only required by Congress for appeals on final orders of removal.") (citation omitted).

21. Even where exhaustion may be considered as a prudential matter, this Court repeatedly held that the requirement does not bar habeas claims like Petitioner's. *See, e.g., Hernandez-Fernandez*, 2025 WL 2976923, at *6–7 (excusing exhaustion where petition raised constitutional questions and where prolonged detention exacerbated the alleged injury); *Lopez-Arevelo*, 801 F. Supp. 3d at 680-81 (no exhaustion required for constitutional challenges to detention procedures).

22. Furthermore, Petitioner's post-removal-period detention under 8 U.S.C. § 1231(a)(6) is not subject to a bond hearing before an Immigration Judge. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 581 (2022) (holding that § 1231(a)(6) "cannot be read to incorporate" a requirement that the Government provide bond hearings before immigration judges after months of detention).

23. Accordingly, habeas corpus is the appropriate avenue for vindicating Petitioner's constitutional, statutory, and regulatory rights and securing his release.

## STATEMENT OF FACTS

24. Mr. Lopez Lozano is a 46-year-old man and a native and citizen of Honduras. He first came to the United States in 1999 and has lived in this country for almost three decades. He

lives in Maryland since 2004, and has two U.S.-citizen sons, who are 25 and 18 years old and who live in California.

25. On November 19, 2019, an Immigration Judge granted Mr. Lopez Lozano withholding of removal to Honduras under the INA, based on a determination that he more likely than not would face persecution if returned to Honduras. Neither party appealed, and the IJ's removal order, withheld as to Honduras, became administratively final on or about December 19, 2019. *See* 8 C.F.R. § 1241.1.

26. Shortly after the IJ's grant of withholding of removal in 2019, ICE released Petitioner from detention on an Order of Supervision (OSUP).

27. Petitioner's fear of return to Honduras is profound and well-founded. Around 2005, Mr. Lopez Lozano helped his brother David escape from Honduras, who had witnessed a murder by the M-18 gang, when he was kidnapped while driving his taxi. David lived in the United States, until 2009, when he was deported to Honduras. Within days of his arrival, he was murdered by the M-18 outside of his house. The gang threatened Mr. Lopez Lozano with the same fate as his brother, if he ever returned to Honduras.

28. From his release in late 2019 until his re-detention on January 20, 2026, a period of six years, Petitioner complied with every condition of his OSUP. He attended every ICE check-in; he maintained steady employment and a steady residence; and he had no negative interactions with law enforcement or immigration authorities.

29. On January 20, 2026, Petitioner reported for a routine ICE check-in. At that check-in, ICE officers arrested and re-detained him with the intention of sending him to a third country. Petitioner has never had any connection to any other country. He is not a citizen, lawful resident, or former resident of *any* other country, beside Honduras, where he cannot be removed. Aside

from in his home country, Petitioner only has significant ties to is the U.S. He has never lived in or even visited any other country.

30. At that check-in on January 20, 2026, ICE took Petitioner into custody and did not give him any written notice of revocation of his Order of Supervision. Nor did they give him any reasons for the revocation. ICE did not afford him an informal interview to contest the revocation, and they did not provide him with a custody review with prior notice and an opportunity to submit evidence. To this date, ICE has not done any of these things.

31. Initially, ICE held Petitioner at the Baltimore Holding Room for about a week, and then afterwards, they transferred him to La Salle in Louisiana, then to Florence, Arizona, and lastly to the Adams County Correctional Center in Natchez, Mississippi, where he remains detained – over a thousand miles away from Maryland.

32. ICE has not identified any third country that has agreed to accept Mr. Lopez Lozano. ICE has not communicated to Petitioner that any third country has agreed to accept him for removal. ICE has not issued Petitioner a third country removal notice or conducted any third country fear screening. To Petitioner's knowledge, ICE has not obtained travel documents to any third country. ICE has not provided Petitioner a timeline for when, if ever, his removal might occur. Petitioner's detention is causing him severe hardship, and release is ultimately necessary.

## LEGAL FRAMEWORK

### I. Removal Proceedings and Fear-Based Relief

33. Noncitizens in regular removal proceedings can seek three main forms of relief based on their fear of returning to their home country: (1) asylum, (2) withholding of removal under the INA, and (3) withholding or deferral of removal under the Convention Against Torture (CAT). Whether a noncitizen can apply for asylum, withholding, or deferral depends not only on

their individual characteristics but also on their type of removal proceedings. Noncitizens may be ineligible for asylum for several reasons, including failure to apply within one year of entering the United States.

34. There are fewer restrictions on eligibility for withholding of removal under the INA than asylum, though both forms of relief require a showing that the noncitizen's "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b). If an IJ finds that a noncitizen has met the elements for withholding, a grant of relief is mandatory, not discretionary. Id.

35. When an IJ grants a noncitizen withholding under the INA, the IJ issues a removal order and simultaneously withholds that order with respect to the country or countries for which the noncitizen demonstrated a risk of persecution. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 531 (2021). Once withholding under the INA is granted, both the noncitizen and DHS have the right to appeal that decision to the BIA within 30 days. *See* 8 C.F.R. § 1003.38(b). If both parties waive appeal or neither party appeals within the 30-day period, the grant of relief and the accompanying removal order become administratively final. *See id.* § 1241.1.

## II. Detention of Noncitizens Granted Withholding of Removal

### A. Statutory Framework

36. Section 1231 of the INA governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)–(6). As relevant here, the "removal period" begins once a noncitizen's removal order "becomes administratively final." 8 U.S.C. § 1231(a)(1)(B). The removal period lasts for 90 days, during which ICE "shall remove the [noncitizen] from the United States" and "shall detain the [noncitizen]" as it carries out the

removal. 8 U.S.C. § 1231(a)(1)–(2). If ICE does not remove the noncitizen within the 90-day removal period, the noncitizen "*may* be detained beyond the removal period" if the noncitizen meets certain criteria, such as being inadmissible or deportable under specified statutory categories. 8 U.S.C. § 1231(a)(6) (emphasis added).

37. If the removal period is not extended, the noncitizen may be released on an Order of Supervision (OSUP), subject to conditions of release. 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5(a)–(b). Under the statute, DHS only provides work authorization to released noncitizens with final removal orders if it finds that the noncitizen "cannot be removed due to the refusal of all countries designated . . . to receive" them or that their removal "is otherwise impracticable or contrary to the public interest." 8 U.S.C. § 1231(a)(7).

38. To avoid "indefinite detention" that would raise "serious constitutional concerns," the Supreme Court in *Zadvydas* construed § 1231(a)(6) to contain an implicit time limit. 533 U.S. at 682. The Court held that § 1231(a)(6) authorizes detention only for "a period reasonably necessary to bring about the [noncitizen]'s removal from the United States." *Id.* at 689. Six months of post-removal-order detention is considered "presumptively reasonable." *Id.* at 701.

39. At that point, when the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the Government to justify continued detention with "evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

40. This Court, in a case like Petitioner's, has already ordered the immediate release of a detainee, subject to his prior order of supervision. *Kwong v. Vergara*, No. 5:25-CV-152-DCB-RPM, 2026 WL 2181318. Equally, peer courts within the Fifth Circuit have ruled the same. *See Shaw v. U.S. Immigr. & Customs Enf't*, No. 26-cv-587, 2026 WL 1717260, *2–3 (W.D. La. May

21, 2026) ("Whatever latitude § 1231(a)(6) and executive policy may afford for temporary, good-faith efforts to secure travel documents, they do not permit the Government to hold anyone on American soil and in civil detention while it waits on speculative, undefined, and shifting possibilities of removal to countries whose willingness to receive him remain uncertain."); *Hoang v. Blanche*, No. 4:26-cv-02681, 2026 WL 2000135 (S.D. TX, Apr 14, 2026) (ordering release where the petitioner had been in post-order detention for 5 months). *Gogoladze v. LaSalle ICE Processing Ctr.*, No. 25-cv-1550, 2026 WL 904789 (W.D. La. Mar. 12, 2026); *Ali v. U.S. Immigr. & Customs Enf't*, No. 25-cv-1600, 2026 WL 805763 (W.D. La. Mar. 2, 2026); *Nabizada v. U.S. Immigr. & Customs Enf't*, No. 1:25-cv-01256, 2026 WL 788061 (W.D. La. Feb. 27, 2026); *Samadi v. Warden Richwood Corr. Ctr.*, No. 25-cv-1889, 2026 WL 660574 (W.D. La. Mar. 9, 2026).

41. ICE may revoke the release of certain noncitizens released on an OSUP under two categories of circumstances. First, a noncitizen's release can be revoked if they violate the conditions of release. *Id.* § 241.4(l)(1). Alternately, the Executive Associate Commissioner (or a District Director) can revoke release on conditions and re-detain a noncitizen when (1) the purposes of release have been served, (2) the noncitizen violated any condition of release, (3) "it is appropriate to enforce a removal order or to commence removal proceedings," or (4) "release would no longer be appropriate" due to the noncitizen's conduct. *Id.* § 241.4(l)(2). In either case, the noncitizen is entitled to receive notice of the reasons for revocation and a prompt informal interview to respond to the allegations. *Id.* § 241.4(l)(1). If the noncitizen rebuts ICE's reasons for revocation, they can be released following the interview. *Id.* § 241.4(l)(3).

42. Further, any individual whose release has been revoked is entitled to the regular custody review procedures in 8 C.F.R. § 241.4, "which will ordinarily be expected to occur within approximately three months after release is revoked." Id. § 241.4(l)(3). "That custody review will

include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." Id.

## III. Third Country Removal Procedures

43. Withholding of removal is a country-specific form of relief that prohibits the Government from removing individuals to the country or countries for which they have demonstrated they are at risk of persecution or torture. *See* 8 U.S.C. § 1231(b)(3)(A). While ICE is authorized to remove noncitizens with withholding of removal to alternative countries, *see* 8 U.S.C. § 1231(b)(2), the INA has a specific hierarchy for countries to which the noncitizen may be removed.

44. Noncitizens can be removed, for instance, first to a country they designate, subject to certain exceptions and limitations, *id.* § 1231(b)(2)(A)–(C); then to the country "of which the [noncitizen] is a citizen, subject, or national," *id.* § 1231(b)(2)(D); then to additional countries, subject to the order provided in § 1231(b)(2)(E)(i)–(vii). Regardless of which country the noncitizen or ICE chooses, removal is contingent on that country accepting the noncitizen. *See id.* § 1231(b)(2).

45. When a noncitizen has a final grant of withholding or deferral of removal, an ICE Deportation Officer ("DO") typically sends requests for removal to a random collection of three or more alternative countries. The request typically consists of a short email to the country's embassy, with an attached ICE Form I-241, "Request for Acceptance of Alien." In nearly every case, the embassies either do not respond or decline the request. As a result, third country removal is exceedingly rare. As the Supreme Court noted in *Johnson v. Guzman Chavez*, in fiscal year 2017, "only 1.6% of [noncitizens] who were granted withholding of removal were actually removed to an alternative country." 594 U.S. at 537.

46. If ICE identifies a country that will accept the noncitizen, ICE must provide that individual with additional process prior to effectuating removal to that country. *See Romero v. Evans,* 280 F. Supp. 3d 835, 848 n.24 (E.D. Va. 2017) ("DHS could not immediately remove petitioners to a third country, as DHS would first need to give petitioners notice and the opportunity to raise any reasonable fear claims."), *rev'd on other grounds, Guzman Chavez*, 141 S. Ct. 2271; *Jama v. ICE*, 543 U.S. 335, 348 (2005) ("If [noncitizens] would face persecution or other mistreatment in the country designated under § 1231(b)(2), they have a number of available remedies: asylum, § 1158(b)(1); withholding of removal, § 1231(b)(3)(A); [and] relief under an international agreement prohibiting torture, *see* 8 CFR §§ 208.16(c)(4), 208.17(a) (2004) . . ."); *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999) (finding that "last minute" designation of alternative country without meaningful opportunity to apply for protection "violate[s] a basic tenet of constitutional due process").

47. The Government itself has repeatedly acknowledged a right to notice and opportunity to seek relief from third country removal, including recently before the U.S. Supreme Court. Transcript of Oral Argument at 33, *Riley v. Bondi*, No. 23-1270 (U.S. 2025) ("We would have to give the person notice of the third country and give them the opportunity to raise a reasonable fear of torture or persecution in that third country."); *see also* Transcript of Oral Argument at 20–21, *Guzman Chavez*, 594 U.S. 523. Despite these Government admissions, the number of recent third country removals are characterized by a lack of notice.

## CLAIMS FOR RELIEF

## COUNT ONE

## VIOLATION OF 8 U.S.C. § 1231(a)(6)

## Indefinite and Prolonged Post-Removal-Period Detention

48. Petitioner repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

49. Petitioner's continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas*, 533 U.S. 678. His removal order has been final for more than six and a half years, since approximately December 19, 2019; his removal is not reasonably foreseeable given his protection from removal to Honduras and the unlikelihood of third country removal.

50. The Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), does not foreclose this claim. *Buenrostro-Mendez* addressed only the statutory question of whether 8 U.S.C. §§ 1225(b) and 1226 require bond hearings for noncitizens in pending removal proceedings; it did not interpret § 1231(a)(6) and did not disturb *Zadvydas*'s controlling construction of that distinct statute. *See id.* at 498–508. Indeed, the panel's passing observation that "*Zadvydas v. Davis* . . . has no direct application to aliens who are detained and being given due process during removal proceedings," *id.* at 508, only confirms that *Zadvydas* does fully apply to a person like Petitioner, whose removal proceedings concluded years ago and who is now held in post-removal-period detention. *See Gava Junior*, slip op. at 12 ("*Zadvydas* by its very terms squarely applies to post-removal-period-detention.").

51. 8 U.S.C. § 1231(a), as interpreted by the Supreme Court in Zadvydas, authorizes detention only for "a period reasonably necessary to bring about the [noncitizen's] removal from the United States." 533 U.S. at 689. Petitioner has been detained for nine months, and he cannot

be deported to Honduras, the only country of which he is a citizen, because he has a final grant of protection from removal there. ICE has not identified any other country to which it seeks to remove Petitioner, and there is no indication that Petitioner could, in fact, be feasibly removed to any country.

52. In fact, "[v]ery few people subject to withholding of removal [] are removed from the United States," as "[f]oreign governments routinely deny requests to receive people who lack a connection to the would-be receiving country." Puertas-Mendoza v. Bondi, No. SA-25-CA-00890-XR, 2025 WL 3142089, at *3 (W.D. Tex. Oct. 22, 2025) (citation modified). Even if ICE does identify such a country, it would be legally obligated to inform Petitioner of the identified country. ICE would then be required to give Petitioner the opportunity to seek fear-based relief from removal to that country, further prolonging his proceedings and detention. See D.V.D v. Dept. of Homeland Sec., 821 F.Supp.3d 102 (D. Mass. 2026).

53. Accordingly, Petitioner will not be removed from the United States in the "reasonably foreseeable future" because (1) he cannot be deported to his home country due to his grant of withholding of removal under the INA; (2) to his knowledge, ICE has not been able to secure travel documents to a third country; and (3) removing Petitioner to any alternative country would require additional proceedings. As such, Petitioner's continued detention violates 8 U.S.C. § 1231(a).

54. Petitioner has been in detention for nine months. Petitioner has more than rebutted any presumption of reasonableness. ICE has failed to even identify a potential third country willing to accept Petitioner. Petitioner has no connection to and is not a citizen, lawful resident, or former resident of any other country than Honduras, and he has never lived in or visited any other country than the United States. It is not clear whether other countries are subject to substantial diplomatic

and practical impediments to accepting U.S. deportees. Therefore, Petitioner has good reason to believe that his removal is not reasonably foreseeable, which shifts the burden to the Government to demonstrate that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

55. Even if a third country is identified, ICE would ***still*** need to comply with the requirements set forth in D.V.D, *supra*, in order to effectuate the removal. *See, also, Jama*, 543 U.S. at 341 (noting the need for acceptance from foreign governments before a third country removal); *Manago v. Carter*, No. 25-cv-3183, 2025 WL 2841209, at *2 (D. Kan. Oct. 7, 2025) (noting the need for identified countries to respond to requests for third country removal); *Tran v. Baker*, 2025 WL 2085020, at *1–2 (D. Md. July 24, 2025) (noting scheduled interview with officials of foreign government); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting need for travel documents); *Tran v. Scott*, No. 2:25-cv-01886, 2025 WL 2898638, at *4 (W.D. Wash. Oct. 12, 2025) (same); *Liu v. Carter*, 25-cv-3036, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (same).

56. Given this reality, it strains credulity to think that ICE will be able to remove Petitioner to some arbitrarily chosen third country – as many countries have recently and repeatedly *declined* to accept the deportation of similarly situated individuals. Like other individuals recently released under similar circumstances, Petitioner is not a citizen of, has never lived in, and has no connection to *any* country besides Honduras, to which he won withholding of removal under the INA.

57. Even in the highly unlikely scenario that an alternative country notifies ICE of its willingness to accept Petitioner, ICE would still have to give Petitioner an opportunity to seek fear-based protection with respect to that country. *See* 8 C.F.R. § 241.8(e); *See e.g., Santamaria*

*Orellana v. Baker*, No. 25-cv-1788-TDC, 2025 WL 2444087, at *8 (D. Md. Aug. 25, 2025) (noting the requirement for an interview after a noncitizen expresses fear of a third country); *Tomas-Ramos v. Garland*, 24 F.4th 973, 977 (4th Cir. 2022); *Manago*, 2025 WL 2841209, at *2 (noting that third country removal is not possible if the petitioner has a credible fear of return to that country).

58. Release is the appropriate remedy for a *Zadvydas* violation. 533 U.S. at 700–02; 8 U.S.C. § 1231(a)(6) (authorizing release "subject to . . . terms of supervision"); *see also Munoz-Saucedo*, 789 F. Supp. 3d at 400 (ordering release under appropriate conditions where re-detained noncitizen's removal was not reasonably foreseeable); *Sagastizado Sanchez*, 2025 WL 2957002, at *12; *Constant*, No. 1:25-cv-1916, ECF No. 25 (same); *Jimenez*, No. 1:25-cv-1199, ECF No. 16 (same); *Bautista Serpas*, No. 1:25-cv-02369, ECF No. 15 (same); *Alababseh v. Perry*, No. 1:25-cv-1973, ECF No. 22 (E.D. Va. Nov. 21, 2025) (same).

59. To order Petitioner's immediate release, this Court needs to only determine that his removal is not reasonably foreseeable under *Zadvydas*. 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). To the extent that this Court considers any factors outside of the foreseeability of Petitioner's removal, "the [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Zadvydas*, 533 U.S. at 700.

## COUNT TWO

## VIOLATION OF THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE

### Re-detention Without Procedural Due Process

60. Petitioner repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

61. First, pursuant to *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), ICE's failure to follow its regulations on revocation of release at 8 C.F.R. § 241.4(l) violates the APA and the Due Process Clause of the Fifth Amendment.

62. Under the *Accardi* doctrine, which originated in the context of an immigration case, agencies are bound to follow their own policies that affect the fundamental rights of individuals, including self-imposed policies and processes that limit otherwise discretionary decisions. *See Accardi*, 347 U.S. at 266–68 (holding that BIA must follow its own regulations in its exercise of discretion); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures . . . even where the internal procedures are possibly more rigorous than otherwise would be required.").

63. When agencies fail to adhere to their own policies as required by *Accardi*, courts frame the violation as a due process violation or as arbitrary, capricious, and contrary to law under the APA. *See Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) ("An agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and consequently may result in a violation of an individual's constitutional right to due process.") (internal quotations and citation omitted); see *Schaefer v. Geren*, 607 F. Supp. 2d 61, 68-70 (D.D.C. 2009), *aff'd sub nom. Schaefer v. McHugh*, 608 F.3d 851 (D.C. Cir. 2010) (addressing Accardi claim pursuant to allegation that Army Board for Correction of Military Records "acted arbitrarily, capriciously, and contrary to law" in violation of APA § 706(2)(A)).

64. Prejudice is generally presumed when an agency violates its own policy. *See Montilla v. INS*, 926 F.2d 162, 169 (2d Cir. 1991) ("We hold that [a noncitizen] claiming the INS has failed to adhere to its own regulations . . . is not required to make a showing of prejudice before

he is entitled to relief. All that needs to be shown is that the subject regulations were for the [noncitizen]'s benefit and that the INS failed to adhere to them.").

65. To remedy an *Accardi* violation, a court may direct the agency to properly apply its policy or invalidate the agency's action for failure to comply with the policy. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 343 (D.D.C. 2018) ("[T]his Court is simply ordering that Defendants do what they already admit is required."); *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 657–58 (D. Mass. 2018) (scheduling bail hearing to review petitioners' custody under ICE's standards because "it would be particularly unfair to require that petitioners remain detained . . . while ICE attempts to remedy its failure").

66. Here, ICE has violated the requirements of 8 C.F.R. § 241.4(l) for revocation of release in violation of *Accardi*. ICE has not provided Petitioner with written notice of its revocation decision or any explanation of its basis for revocation. If ICE alleged that Petitioner had violated his conditions of release, it was required to "notif[y] [him] of the reasons for revocation" and "afford[] [him] an initial informal interview promptly" to allow him to contest these reasons. 8 C.F.R. § 241.4(l)(1). He has received no such notification or interview, nor has he received any written notice that his release was in fact revoked, much less one signed by an individual with authority to do so.

67. ICE's failure to comply with its regulations is prejudicial. Prejudice can be presumed because the regulations implicate fundamental liberty interests and due process rights. *See Delgado-Corea v. INS*, 804 F.2d 261, 263 (4th Cir. 1986) (holding that "violation of a regulation can serve to invalidate a deportation order when the regulation serves a purpose to benefit the [noncitizen]" and the violation affected "interests of the [noncitizen] which were protected by the regulation") (internal quotations omitted).

68. Other Courts within the Fifth Circuit have likewise recognized that the § 241.4 revocation framework exists precisely "to ensure that noncitizens who have been released to supervision do not arbitrarily have that supervision revoked," and that ICE's failure to follow it creates an "undeniably significant" risk of "arbitrary and erroneous deprivation." *Gurung*, 2026 WL 93145, at *8 (internal quotations and citation omitted).

69. The regulations provide re-detained noncitizens like Petitioner with a discrete opportunity to obtain freedom from detention, an opportunity that has been withheld from him. *See Gurung*, 2026 WL 93145, at *22 (recognizing that conditionally released individuals "have a protected interest in their 'continued liberty'" that may not be stripped without due process (quoting *Young v. Harper*, 520 U.S. 143, 147 (1997))); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects.").

70. Regardless of whether ICE complied with its regulations, the lack of process afforded Petitioner to challenge his re-detention violates his procedural due process rights under the *Mathews* test. *See Miranda v. Garland*, 34 F.4th 338, 358–59 (4th Cir. 2022) (applying *Mathews* to review immigration detention); *Morrissey v. Brewer*, 408 U.S. 471, 480–82 (1972) (holding that revocation of parole involves significant values within the protection of Due Process and termination of that liberty requires, among other protections, written notice of the claimed violations and an informal hearing to ensure that revocation is based on verified facts).

71. As an initial matter, Petitioner is unquestionably entitled to the protections of the Fifth Amendment's Due Process Clause. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."

*Zadvydas*, 533 U.S. at 693. "[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990).

72. Petitioner has lived in the United States for more than two decades, was lawfully released by ICE on supervised conditions in 2019, and built his entire adult life in this country. He could hardly possess a stronger claim to due process protection.

73. With Petitioner's entitlement to due process established, application of the *Mathews* test confirms that his re-detention without any meaningful review is unconstitutional. First, "the private interest at stake is freedom from detention, a liberty interest which 'lies at the heart of the liberty that [the Due Process] Clause protects.'" *Miranda*, 34 F.4th at 359 (citing *Zadvydas*, 533 U.S. at 690); *see also Gava Junior*, slip op. at 17 ("Petitioner's private interest in being free from detention is strong."); *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception . . . ."); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("Civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections."). Thus, the first *Mathews* factor undoubtedly favors Petitioner.

74. The fact that Petitioner was released almost immediately after he obtained withholding of removal in 2019, and was out of detention for more than six years, during which he complied with all OSUP requirements, makes his re-detention particularly problematic. His detention is nothing but egregious, given the severe and ongoing harm he has suffered. ICE's failure to provide any meaningful process before re-detaining and transferring him across the country through 3 different detention centers, compounds this harm.

75. Accordingly, this Court should order Petitioner's release on the conditions with which he was previously complying. *See Jimenez*, 317 F. Supp. 3d at 657 (ordering petitioners' release because "it would not be appropriate to allow ICE to decide again whether [petitioners'] detention should continue" and "[i]t would be particularly unfair to require that petitioners remain detained for another 30 days while ICE attempts to remedy its failure to follow its regulations and to provide each of them due process"); *Bautista Serpas*, No. 1:25-cv-02369, ECF No. 15 at 11 (ruling that OSUP revocation was unlawful based on failure to follow regulation and ordering Petitioner released); *Benitez Pineda*, No. 1:25-cv-2337, ECF No. 17 at 11 (same).

## <u>COUNT THREE</u>

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

### Failure to Comply with Binding Regulations Governing Revocation of Release

76. Petitioner repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

77. Under the APA, a court shall "hold unlawful and set aside agency action. . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A), (B). The APA also requires a court to set aside and hold unlawful agency action that is "without observance of procedure required by law." *Id.* § 706(2)(D).

78. The APA's reference to "law" in the phrase "not in accordance with law" "means, of course, *any* law, and not merely those laws that the agency itself is charged with administering." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) (emphasis in original). It is well established that violations of an agency's own binding regulations are cognizable under the APA. *See Damus*, 313 F. Supp. 3d at 337 ("It is clear, moreover, that [*Accardi*] claims may arise under the APA.").

79. Respondents' re-detention of Petitioner was not in accordance with law because it was effected in violation of ICE's own binding regulations governing the revocation of release at 8 C.F.R. § 241.4(l), as fully set forth in Count Two above. Among other things, Respondents failed to provide Petitioner with written notice of the revocation decision, failed to afford him the prompt informal interview required by 8 C.F.R. § 241.4(l)(1), and failed to make any individualized determination by an official with delegated revocation authority under 8 C.F.R. § 241.4(l)(2).

80. Respondents' decision to re-detain Petitioner was also arbitrary, capricious, and an abuse of discretion. Petitioner had complied with every condition of his Order of Supervision for six years, and Respondents have identified no record evidence or individualized finding, justifying revocation of his release. An agency decision that "runs counter to the evidence before the agency" is arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

81. Respondents' re-detention of Petitioner was also contrary to constitutional right because it was effected without notice and opportunity to be heard required by the Fifth Amendment's Due Process Clause. *See* 5 U.S.C. § 706(2)(B). Agency action that infringes a detainee's constitutionally protected liberty interest in remaining at liberty under an Order of Supervision must be set aside under the APA.

82. Respondents' re-detention of Petitioner was further taken without observance of procedure required by law. *See* 5 U.S.C. § 706(2)(D). The procedures prescribed by 8 C.F.R. § 241.4(l)—written notice of revocation, a prompt informal interview, and an individualized determination by an official with delegated revocation authority—are mandatory prerequisites to revocation of an Order of Supervision, and Respondents observed none of them.

83. Accordingly, Petitioner's re-detention should be held unlawful and set aside because it was (1) arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, *see* 5 U.S.C. § 706(2)(A); (2) contrary to Petitioner's constitutional right to due process under the Fifth Amendment, *see id.* § 706(2)(B); and (3) taken without observance of the procedures required by 8 C.F.R. § 241.4(l), *see id.* § 706(2)(D).

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests that this Court grant the following relief:

1. Assume jurisdiction over this matter;
2. Pursuant to 28 U.S.C. § 2243, issue an order to show cause directing Respondents to file within three (3) days absent good cause for a short extension;
3. Prohibit Petitioner's removal from the United States and transfer outside the Southern District of Mississippi, during the pendency of this action;
4. Declare that Petitioner's detention violates 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Due Process Clause of the Fifth Amendment;
5. Declare that Respondents' failure to follow the binding revocation of release provision at 8 C.F.R. § 241.4 violates the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act;
6. Grant the writ of habeas corpus and order Petitioner's immediate release from ICE custody, with all personal belongings and on conditions of supervision no more restrictive than those in place before his January 20, 2026 re-detention;
7. Prohibit Respondents from revoking Petitioner's Order of Supervision or re-detaining him in the future without complying with 8 C.F.R. § 241.4; and

8. Grant any further relief this Court deems just and proper.

Dated: October 22, 2026

Respectfully submitted,

*/s/ Paloma Wu*
Paloma Wu
Miss. Bar No. 105464
Mississippi Center for Justice
210 E. Capitol Street, Suite 1800
Jackson, MS 39201
(601) 352-2269
pwu@mscenterforjustice.org

Yarima Gonzalez-Crespo*‡
PR Bar No. 22423
Amica Center for Immigrant Rights
1025 Connecticut Ave. NW, Suite 701
Washington, DC 20036
(202) 998-3111
yarima@amicacenter.org

*Attorneys for Petitioner*

* *Pro Hac Vice application forthcoming*
‡ *Not admitted in DC; working remotely from and admitted only in Puerto Rico.*

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner Cristofer Raul Lopez Lozano and submit this verification on his behalf. I hereby verify, under penalty of perjury under 28 U.S.C. § 1746, that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: October 22, 2026

Respectfully submitted,

Yarima Gonzalez-Crespo, Esq.
Amica Center for Immigrant Rights
1025 Connecticut Ave. NW, Suite 701
Washington, DC 20036
(202) 998-3111
yarima@amicacenter.org
*Pro Bono Counsel for Petitioner*

# Exhibit 1

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BALTIMORE IMMIGRATION COURT**

Respondent Name:
LOPEZ LOZANO, CRISTOFER RAUL

Address:
Ice Custody-WCDC
Snow Hill, MD

Attorney Name:
Cubas, Claudia Raquel

Attorney Address:
1612 K Street NW Suite 204
Washington, DC 20006

Alien Registration Number:
077530281
Riders:

IN WITHHOLDING-ONLY PROCEEDINGS

Date: 11/14/2019

## ORDER OF THE IMMIGRATION JUDGE

☑ This is a summary of the oral decision entered on 11/14/2019.

☐ Both parties waived the issuance of a formal oral decision in this proceeding.

The alien's request for:

☑ Withholding of Removal under Immigration and Nationality Act § 241(b)(3) is:

☑ granted ☐ withdrawn ☐ denied.

☐ Withholding of Removal under the Convention Against Torture is:

☐ granted ☐ withdrawn ☐ denied.

☐ Deferral of Removal under the Convention Against Torture is:

☐ granted ☐ withdrawn ☐ denied.

Immigration Judge: Kessler, Elizabeth 11/14/2019

| | | | |
|---|---|---|---|
| Appeal: | Department of Homeland Security: | ☑ waived | ☐ reserved |
| | Respondent: | ☑ waived | ☐ reserved |

Appeal Due:

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service
To: [] Alien | [] Alien c/o custodial officer | [E] Alien's atty/rep. | [E] DHS
By: Kessler, Elizabeth , Immigration Judge
Date: 11/14/2019

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

5:26-cv-982-DCB-BWR

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CRISTOFER RAUL LOPEZ LOZANO

**(b)** County of Residence of First Listed Plaintiff: Adams
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Paloma Wu, Mississippi Center for Justice, (601) 352-2269
210 E. Capitol St., Suite 1800, Jackson, MS 39201
Yarima Gonzalez-Crespo, Amica Center for Immigrant Rights, (202) 998-3111
1025 Connecticut Ave. NW, Suite 701, Washington, DC 20036

## DEFENDANTS

TIMMY VAUGHT, TODD BLANCHE, MARKWAYNE MULLIN, TODD M. LYONS

County of Residence of First Listed Defendant: Adams
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
U.S. Attorney's Office, 501 E. Court Street, Suite 4.430, Jackson, MS 39201

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [x] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
28 USC 2241; 8 USC 1231(a)(6)

Brief description of cause:
Habeas petition challenging prolonged post-removal-order immigration detention and revocation of release (INA, APA, Fifth Amendment)

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE ____________________ DOCKET NUMBER ____________________

DATE: 10/22/2026

SIGNATURE OF ATTORNEY OF RECORD: */s/ Paloma Wu*

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT $ 5 APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

AMSSDC-6213085